UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REPRESENTATIVE NIRMALA
RAMNARAIN,
*Personal Representative of the Estate
of Rianna Ramnarain*,
    Plaintiff,

v.                                         CIVIL ACTION NO. 1:20-10654-MPK[1]

JASON GROSSMAN, M.D.,
GORDON HUGGINS, M.D., and
the UNITED STATES OF AMERICA,
    Defendants.

MEMORANDUM AND ORDER ON MOTION TO DISMISS FOR LACK OF
JURISDICTION BY UNITED STATES OF AMERICA (#11).

KELLEY, U.S.M.J.

I. Introduction.

On December 24, 2019, plaintiff, Nirmala Ramnarain, serving as representative of the Estate of Rianna Ramnarain, filed a medical malpractice complaint in the Massachusetts Superior Court for Suffolk County based on the alleged negligent medical care of the decedent while she was a patient at Harbor Health Services, Inc. (Harbor Health). (#1-1); *see* #1 at 2; #25-1 at 1. Plaintiff named physicians, Dr. Jason Grossman, M.D. and Dr. Gordon Huggins, M.D., and nurse practitioners, Charmaine Desir and Allison Foley, as defendants. (#1 at 1; #1-1 at 1.) On April 2, 2020, the case was removed to federal court pursuant to 42 U.S.C. § 233(c). (#1.)

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 29 U.S.C. § 636(c). (#21.)

On April 2, 2020, the United States Attorney filed a notice of substitution, substituting the United States of America as a proper party defendant for Desir and Foley pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2679(d), *et seq.* (#5.) On April 9, 2020, the court entered the substitution order, providing that the United States was the sole defendant on the claims against Desir and Foley. (#7 at 1.)[2]

The United States filed the present motion to dismiss for lack of subject-matter jurisdiction. (#11.) The motion has been fully briefed (##12, 13, 14, 15, 24), and is ready for disposition.

## II.  Factual Background.

The following facts are taken from plaintiff's complaint, as well as the exhibits attached to the parties' pleadings.[3]

The decedent, Rianna Ramnarain, who suffered from cardiac dysrhythmia, had been a patient at Harbor Health from October 2015 to January 2017. (#13-1 at 3.) She died on January 3,

---

[2] The Federal Tort Claims Act (FTCA) authorizes the settlement of any claim for money damages against the United States for injury or death caused by the negligent acts or omissions of any federal government employee acting within the scope of their employment. *See Corte-Real v. U.S.*, 949 F.2d 484, 485 (1st Cir. 1991). At the time of their alleged medical malpractice, Desir and Foley were employed by Harbor Health, a federal program grantee under 42 U.S.C § 254b. (#1 at 2.) As employees of Harbor Health, Desir and Foley were considered to be employees of the Public Health Service (PHS) under the Federally Supported Health Centers Assistance Act (the FSHCAA), 42 U.S.C. § 233(g)–(n) and, therefore, covered by the FTCA. *See* 28 U.S.C. §§ 1346(b), 2671–80. The remedy against the United States provided by the FTCA is the "exclusive" remedy for medical malpractice claims against PHS employees for conduct committed within the scope of their employment. 42 U.S.C. § 233(a).

[3] In ruling on a motion to dismiss for lack of subject-matter jurisdiction, the court may "consider whatever evidence has been submitted, such as the depositions and exhibits submitted[,]" in addition to the allegations pleaded within the complaint. *Merlonghi v. U.S.*, 620 F.3d 50, 54 (1st Cir. 2010) (quoting *Aversa v. U.S.*, 99 F.3d 1200, 1210 (1st Cir. 1996)); *see also Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011).

2017, after Desir and Foley and other medical professionals employed by Harbor Health allegedly failed to provide proper evaluation, treatment, and follow-up care for her heart condition. *Id.*

In Fall 2018, plaintiff filed an administrative tort claim with the Department of Health & Human Services (HHS), using a Standard Form 95 (SF 95). (#13-1.)[4] Plaintiff's claim alleged "that, from October 2015 through January 3, 2017, [Desir, Foley, and Harbor Health] committed medical malpractice by failing to properly diagnose, treat[,] and refer [the decedent] to a cardiologist, resulting in [her] death . . . from cardiac dysrhythmia on January 3, 2017." (#13-4 at 2.)[5] Plaintiff indicated in her SF 95 that the decedent had been born in 1991, making her in her mid-twenties when she died. (#13-1 at 3.) She had worked in retail and had a young son at the time of her death. *Id.* Plaintiff claimed that, "[a]s a result of [Desir and Foley's alleged] negligence," the decedent "suffered a premature and preventable death [from cardiac dysrhythmia and] pain and suffering; her parents and son suffered a loss of consortium and economic loss[;] and the estate incurred funeral and burial expenses." *Id.* Plaintiff indicated that her "sum certain" or "total"

---

[4] Section 2675 of the FTCA provides that one cannot file suit against the United States for "personal injury or death caused by the negligent or wrongful act or omission" of any government employee while acting in the course of her employment, unless she has "first presented the claim to the appropriate Federal agency" and the claim has "been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). An administrative claim made under the FTCA "shall be deemed to have been presented when a Federal agency receives from [the] claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ." 28 C.F.R. 14.2(a).

[5] Specifically, plaintiff contends in her SF 95 that Desir and Foley were negligent in their failure to: "recognize and appreciate a patient at increased risk for a cardiac dysrhythmia"; "inform/educate [the decedent] regarding concerning EKG findings"; "inform/educate [the decedent] regarding cardiac dysrhythmia and the importance of proper diagnosis and treatment"; "ensure that proper evaluation/follow-up had been provided/obtained by" the decedent; determine whether [the decedent] had been seen in follow-up by her cardiologist to determine an appropriate treatment plan, including but not limited to medications, cardioversion, ablation therapy, and/or an implantable cardiovascular defibrillator"; and "refer [the decedent] back to her cardiologist when a holter monitor had not been applied and no treatment plan had been established[.]" (#13-1 at 3.)

estimated "amount of [her] claim[,]" in dollars, to be ">10,000,000.00[,]" with ">5,000,000.00" to be allocated toward personal injury and ">5,000,000.00" to be allocated toward the decedent's wrongful death. *Id.*

On November 29, 2018, HHS sent plaintiff's counsel a letter, acknowledging receipt of plaintiff's claim. (#13-2 at 2.) The letter stated that, in order to evaluate the viability of plaintiff's claim, HHS needed the following "substantiating evidence" within thirty days: the decedent's pertinent medical records and diagnostic tests; itemized bills pertaining to all relevant medical treatment and funeral expenses; an authenticated death certificate; any autopsy reports showing the cause of death; evidence of plaintiff's appointment as Administrator or Executor of the Estate and authority to represent; evidence to substantiate a claim for any lost wages; and "[a]ny other information which you believe has a bearing on the responsibility of [Harbor Health] and its employees for the injuries and/or damages claimed." (#13-2 at 2–3.) The letter made no mention of any deficiencies with respect to the sum certain. *See id.* On December 11, 2018, plaintiff replied, providing HHS with three CD's containing medical records and bills from various hospitals and health centers, twenty-one authorizations to obtain additional medical records and bills, the decedent's death certificate, and a voluntary administration statement. (#13-3 at 2.)

On December 31, 2019, HHS denied plaintiff's administrative claim, explaining that "[t]he evidence fails to establish the alleged injuries were due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment." (#13-4 at 2.) Again, HHS failed to mention any deficiencies with respect to the sum certain. *See id.* at 2–3. Plaintiff then filed the present lawsuit within the six-month time period prescribed by 28 U.S.C. § 2401(b).[6]

---

[6] Section 2401(b) of the FTCA provides that "[a] tort claim against the United States should be forever barred unless it is presented in writing to the appropriate Federal agency within two years

III. Legal Standard.

A defendant may move to dismiss an action based on a lack of federal subject-matter jurisdiction pursuant to Rule 12(b)(1). "'Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed.' The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction." *Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 32 (1st Cir. 2012) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998)). Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *see also Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 21 (1st Cir. 2017).

In ruling on a motion to dismiss for lack of jurisdiction, the court must "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Sanchez ex rel. D.R.-S. v. U.S.*, 671 F.3d 86, 92 (1st Cir. 2012). That being said, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993), *cert. denied*, 515 U.S. 1144 (1995); *Johansen v. U.S.*, 506 F.3d 65, 68 (1st Cir. 2007).

IV. Analysis.

The United States argues that plaintiff has failed to satisfy the FTCA's jurisdictional requirements because she failed to state a sum certain in the administrative claim she filed with HHS. (#11 at 1.) Specifically, the United States maintains that, because plaintiff's claim, with a sum certain of ">10,000,000.00[,]" in total damages, "was completely open-ended," HHS was

---

after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

"left completely rudderless in assessing its liability and exposure." (#12 at 5.) The United States' motion to dismiss is denied for the following reasons.

In order for federal courts to have jurisdiction over a FTCA claim against the United States, a claimant must "timely present [her] claim, in writing, stating a sum certain[.]" *Corte-Real v. U.S.*, 949 F.2d 484, 485–86 (1st Cir. 1991); *see Holloway v. U.S.*, 845 F.3d 487, 489 (1st Cir. 2017). The purpose of the sum certain requirement is to stipulate the government's potential liability and allow the government to determine "if settlement would be in the best interest of all." *Coska v. U.S.*, 114 F.3d 319, 322 (1st Cir. 1997) (quoting *Corte-Real*, 949 F.2d at 486).

To state adequately a sum certain, a claimant must provide a definite monetary figure, representing the maximum amount of claimed damages. *See Kokaras v. U.S.*, 980 F.2d 20, 22–23 (1st Cir. 1992); *Reilly v. U.S.*, 863 F.2d 149, 173 (1st Cir. 1988) (Because the claimant is in the better position to determine the amount in damages, she has the duty to provide an exact figure, and, where she is uncertain, must determine the worst-case scenario: "paint[ing] the picture as bleakly as reason permits and conscience allows."); *see also Green v. U.S. Postal Serv.*, 285 F. Supp.3d 416, 419 (D. Mass. 2018). However, even unartfully drafted claims may survive, if they give the government sufficient notice of the injury to allow it to investigate the plaintiff's claims. *See Holloway*, 845 F.3d at 491 ("what matters is whether the plaintiff timely specified a sum certain on the SF 95 or otherwise timely provided documents from which a sum certain could be ascertained"); *see also Lopez v. U.S.*, 758 F.2d 806, 809–10 (1st Cir. 1985) (Because the administrative requirements are "not intended to put up a barrier of technicalities to defeat [the] claims" of individuals wishing to sue the government, the court must determine whether the submitted documentation by the claimant satisfies the purpose of the administrative requirements, rather than assess whether the claimant has strictly and uniformly adhered to every single

administrative step.). Applying these principles, the court finds that plaintiff adequately alleged a sum certain in her SF 95 form. However, the unnecessary ">" signifiers in plaintiff's SF 95 should be stricken.

The First Circuit has determined that the administrative purpose of the sum certain requirement has been satisfied where the plaintiff has stated an amount of damages in her SF 95, despite unnecessary surplusage. *See Corte-Real*, 949 F.2d at 487–88. In *Corte-Real*, the plaintiff injured his wrist while working as a security guard at a federal warehouse. *Id.* at 485. In the section of the SF 95 form that required him to state the amount he was claiming for personal injury, the "plaintiff wrote, '$100,000 plus because still treating and out of work.'" *Id.* However, in the section that asked for the total amount of his claim, the "plaintiff wrote '$100,000,' without qualification." *Id.* The plaintiff also attached "copies of medical records and bills substantiating his injury." *Id.* The government in *Corte-Real* moved for summary judgment, contending that the plaintiff's use of the phrase "$100,000 plus" in the personal injury section "caused the entire claim to fail the sum certain requirement[] because" it was the equivalent of an "indefinite statement[] about the amount[]" of his claim. *Id.* at 485–86.

The First Circuit held that the "plaintiff's administrative claim, while containing improper qualifying language" in the personal injury section, "did state a sum certain and was properly presented." *Id.* at 484. The government was allowed to disregard the surplusage in the personal injury box, and the plaintiff's claim was allowed to proceed, with $100,000 as the sum certain. *Id.* at 487. The court reasoned that the "[p]laintiff's unequivocal response" in the "total" section of the SF 95 "communicated a sum certain to which the [g]overnment could refer for purposes of investigation and determination of whether settlement was appropriate." *Id.* at 486–87 (citations

omitted). "To throw out the claim entirely, as other than one for a sum certain, was, on these facts, bureaucratic overkill." *Id.* at 486.

While plaintiff here, unlike the plaintiff in *Corte-Real*, included the ">" signifier in each section of her SF 95, the overall objective the First Circuit articulated in *Corte-Real* is still satisfied by allowing her claim to proceed. The decision in a more recent case in this circuit, *Ortiz-Lebron v. U.S.*, is illustrative. There, the three plaintiffs, a deceased police officer's mother, father, and brother, filed an administrative claim seeking "compensation in an amount of not less than one million dollars each[.]" *Ortiz-Lebron v. U.S.*, No. 10-1513(SEC), 2012 U.S. WL 6552782, at *1 (D.P.R. Dec. 14, 2012). In allowing the claim to proceed, the court struck the phrase "not less than one million dollars" as surplusage, so that the plaintiffs' collective damages capped out at three million dollars. *Id.* at *8. The court reasoned that, while "the unnecessary qualifying language render[ed plaintiffs'] definite figure[s] faulty[,]" this "equitable middle ground . . . dispel[led] the government's 'the sky's the limit' concerns." *Id.* at **8, 9. The court further noted that its "course of action—striking the qualifying language rather than barring the entire claim—comport[ed] with most circuits' holdings permitting claims where qualifying language accompanied the amount of damages." *Id.* at *8 (citing *Adams v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 318, 322 (2d Cir. 1986), *Rucker v. U.S. Dep't of Labor*, 798 F.2d 891, 893 (6th Cir. 1986), and *Martinez v. U.S.*, 728 F.2d 694, 697 (5th Cir. 1984)). *Cf. Coska*, 114 F.3d at 322 (case properly dismissed when neither SF 95 form, nor accompanying demand packet, specified a sum certain or contained any "information about the liability of the United States" or "the amount of damages [the plaintiff] would seek from the United States"); *Kokaras*, 980 F.2d at 22–23 (action for personal injury had been properly dismissed when injured parties had not timely specified a sum certain and amount of damages could not be ascertained from attached medical bills).

Like the plaintiffs in *Corte-Real* and *Ortiz-Lebron*, but unlike those in *Coska* and *Kokaras*, plaintiff stated a damages figure in her SF 95 form. While plaintiff's use of the unnecessary ">" signifiers render her damages figures faulty, striking the unnecessary surplusage would, as the court explained *Ortiz-Lebron*, alleviate the government's concern that plaintiff's claims are too open-ended to proceed. Moreover, unlike in *Coska* and *Kokaras*, the information that plaintiff provided to the government, though incomplete, allowed the government to begin investigating plaintiff's claim.

## V. Conclusion

For the reasons stated above, defendant, United States of America's motion to dismiss (#11) is denied. The unnecessary ">" signifiers in plaintiff's SF 95 are stricken, and $10,000,000.00 is deemed to be plaintiff's "sum certain."


September 25, 2020                                       /s/ M. Page Kelley
                                                         M. Page Kelley
                                                         Chief United States Magistrate Judge